## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

IN RE CHESAPEAKE ENERGY      )
CORPORATION 2012 ERISA CLASS    )     Lead Case No. CIV-12-688-M
LITIGATION                      )

## ORDER

Before the Court are defendants' Motion to Dismiss and Brief in Support of Motion to

Dismiss Consolidated Class Action Complaint and defendants' Request for Judicial Notice and

Consideration of Documents in Support of Defendants' Motion to Dismiss Consolidated Class

Action Complaint, both filed April 22, 2013.  On June 18, 2013, plaintiffs filed their response to

defendants' motion to dismiss, and on July 22, 2013, defendants filed their reply.

I.       BACKGROUND

     A.     ERISA

Plaintiffs, on behalf of the Chesapeake Energy Corporation Savings and Incentive Stock

Bonus Plan (the "Plan"), themselves, and a class of all other similarly situated Plan participants,

have brought this action under the federal Employee Retirement Income Security Act of 1974, 29

U.S.C. § 1001 et seq. ("ERISA").  ERISA is a comprehensive remedial statute designed to "protect

. . . the interests of participants in employee benefit plans and their beneficiaries, . . . by establishing

standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and

by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C.

§ 1001(b).  Specifically, ERISA provides, in pertinent part:

> (a)(1) Subject to sections 403(c) and (d), 4042, and 4044 [29 U.S.C.
> §§ 1103(c), (d), 1342, 1344], a fiduciary shall discharge his duties
> with respect to a plan solely in the interest of the participants and
> beneficiaries and –
> > (A) for the exclusive purpose of:
> > > (i) providing benefits to participants and their
> > > beneficiaries; and

(ii) defraying reasonable expenses of
administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.
(2) In the case of an eligible individual account plan (as defined in section 407(d)(3) [29 U.S.C. § 1107(d)(3)], the diversification requirement of paragraph 1(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph 1(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 407(d)(4) and (5) [29 U.S.C. § 1107(d)(4) and (5)]).

29 U.S.C. § 1104(a).[1]  These requirements generally are referred to as the duties of loyalty and care,

or as the "solely in the interest" and "prudence" requirements.

B.    The Plan

The Plan is an "employee pension benefit plan," as defined by ERISA § 3(2)(A).  *See*

Consolidated Class Action Complaint at ¶ 58.  The Plan was established on October 1, 1988 by

Chesapeake Energy Corporation ("Chesapeake").  *See id.* at ¶ 59.  The Plan is a defined contribution

plan that covers all employees of Chesapeake and its subsidiaries, except for hourly employees of

---

[1]ERISA defines an eligible individual account plan as follows:
an individual account plan which is (i) a profit-sharing, stock bonus, thrift, or savings plan; (ii) an employee stock ownership plan; or (iii) a money purchase plan which was in existence on the date of enactment of this Act and which on such date invested primarily in qualifying employer securities.
29 U.S.C. § 1107(d)(3)(A).

Chesapeake Appalachia, L.L.C., a wholly owned subsidiary. *See id.* at ¶ 60. Effective July 1, 2009, the Plan was amended to designate the employer stock option as an Employee's Stock Ownership Plan ("ESOP"). *See id.* at ¶ 61. "The ESOP component of the Plan is intended to primarily invest in common stock of [Chesapeake]." 2009 Plan, attached as Exhibit 2 to the Consolidated Class Action Complaint, at CHK_WC000162. In order to be an "active participant" in the Plan, an employee must complete three months of eligible service and be eighteen years or older. *See* Consolidated Class Action Complaint at ¶ 65.

The Plan identifies Chesapeake as the "Plan Administrator." *See id.* at ¶ 67.[2] The 2009 Plan provides that "the Employer, Plan Administrator, and any other person or entity who has authority with respect to the management, administration, or investment of the Plan may exercise that authority in its/his full discretion, subject only to the duties imposed under ERISA." 2009 Plan at CHK_WC000244.

The Plan provides that all or some portion of a Plan participant's account resulting from (1) elective deferral contributions, (2) matching contributions, and (3) discretionary contributions may be invested in Chesapeake common stock ("Chesapeake stock"). *See id.* at ¶ 72. A Plan participant enters into an elective deferral agreement with Chesapeake to have a portion of his compensation deferred to his Plan account by Chesapeake, and Chesapeake then makes Elective Deferral Contributions on behalf of the employee which are equal to a portion of compensation as specified in the elective deferral agreement. *See id.* at ¶ 73. A participant's Elective Deferral Contributions may be up to 75% of pre-tax annual compensation and up to 100% of performance related bonus

---

[2]Chesapeake delegated some or all of its administrative duties and authority to the Benefits Committee. *See* Consolidated Class Action Complaint at ¶ 71.

compensation, subject to certain limitations. *See id.* The Plan also provides for automatic Elective Deferral Contributions from employees. *See id.* at ¶ 74.

Chesapeake also provides for Plan participants to receive matching contributions which are invested in Chesapeake stock. *See id.* at ¶ 77. The matching contributions are calculated based on Elective Deferral Contributions and Compensation for the payroll period and may amount up to 15% of a participant's compensation. *See id.* at ¶ 78. The matching contributions are invested automatically in Chesapeake stock. *See id.* at ¶ 79. The Plan further provides that discretionary contributions may be made for each plan year in an amount determined by Chesapeake, and any discretionary contributions are automatically invested in Chesapeake stock.

Finally, the Plan places limits on a participant's ability to transfer funds out of Chesapeake stock. Specifically, the Plan provides:

> Effective January 1, 2007, the Participant shall direct the transfer of amounts resulting from those Contributions that are held in Qualifying Employer Securities pursuant to the following schedule:
>
> (1)  100% of the Contributions that are held in Qualifying Employer Securities after the Participant attains age 55, or
> (2)  100% of the Contributions that are held in Qualifying Employer Securities for a Participant who has completed at least three (3) years of Vesting Service.

2009 Plan at CHK_WC000212.

As of December 31, 2010, the Plan held $236,427,190 of Chesapeake stock, which was approximately 49.8% of total investments in the Plan. *See* Consolidated Class Action Complaint at ¶ 85. As of December 31, 2011, the Plan held $246,005,310 of Chesapeake stock, which was approximately 45% of total investments. *See id.* at ¶ 86.

C.       Amended Class Action Complaint

On February 21, 2013, plaintiffs filed the Consolidated Class Action Complaint.  In their

complaint, plaintiffs summarize their claims as follows:

> 4.       Specifically, Plaintiffs allege in Count I that Defendants, each
> having certain responsibilities regarding the management and
> investment of Plan assets, breached their fiduciary duties to the
> Plan's participants and beneficiaries by failing to prudently and
> loyally manage the Plan's investment in Company Stock by: (1)
> continuing to offer Chesapeake Stock as an investment option for the
> Plan when it was imprudent to do so; and (2) maintaining the Plan's
> preexisting significant investment in Chesapeake Stock when it was
> no longer a prudent investment for the Plan.  These actions/inaction
> under the circumstances are counter to the express purpose of ERISA
> pension plans, which are designed to help provide retirement funds
> for participants.  *See* ERISA § 2, 29 U.S.C. § 1001
> ("CONGRESSIONAL FINDINGS AND DECLARATION OF
> POLICY").

> 5.       Plaintiffs' Count II alleges that certain Defendants failed to
> avoid or ameliorate inherent conflicts of interest which crippled their
> ability to function as independent, "single-minded" fiduciaries with
> only the Plan's and its participants' best interests in mind.

> 6.       Plaintiffs' Count III alleges that certain Defendants breached
> their fiduciary duties by failing to adequately monitor other persons
> to whom the management and administration of the Plan's assets
> were delegated, despite the fact that such Defendants knew or should
> have known that such other fiduciaries were imprudently allowing
> the Plan to continue offering Chesapeake Stock as an investment
> option, and investing the Plan's assets in Chesapeake Stock when it
> was no longer prudent to do so.

> 7.       Defendants have allowed the imprudent investment of the
> Plan's assets in Chesapeake Stock throughout the Class Period
> despite the fact they knew or should have known that such investment
> was imprudent in light of circumstances demonstrating the
> Company's dire financial condition, which as explained in detail
> below, included among other things: (a) an over-supply of natural gas
> in a market saturated with natural gas producers; (b) the collapse of
> natural gas prices; (c) the Company's tremendous and unsustainable
> debt load; (d) the Company's severe liquidity crisis; (e) the

Company's altered risk profile; (f) the Company's deteriorating Altman Z-score ("Z-score") – a financial formula commonly used by financial professionals to predict whether a company is likely to go bankrupt – which indicated that Chesapeake was in danger of bankruptcy; and (g) the Company's serious mismanagement and improper business practices highlighted by the rogue conduct of its former Chairman, Chief Executive Officer and co-founder of Chesapeake, Aubrey McClendon, during the Class Period.

8.      A prudent fiduciary would have recognized that as a consequence of the above, the Plan's significant and continuing investment of employees' retirement savings in Company Stock was contrary to the primary purpose of the Plan, which is "[t]o provide employees an effective, efficient, and convenient retirement savings vehicle."  Chesapeake Energy Corporation Savings and Incentive Stock Bonus Plan Investment Policy Statement, effective as of February 29, 2012, CHK_WC000001-09 (the "2012 Investment Policy Statement"), attached hereto as Exhibit 1 at CHK_WC000003.

9.      Plaintiffs seek to recover substantial losses to the Plan for which Defendants are liable pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132.  Because Plaintiffs' claims apply to the Plan, inclusive of all participants with accounts invested in Company Stock during the Class Period, and because ERISA specifically authorizes participants, such as Plaintiffs, to sue for relief to the Plan for breaches of fiduciary duty such as those alleged herein, Plaintiffs bring this action as a class action on behalf of the Plan and all participants and beneficiaries of the Plan during the proposed Class Period.

Consolidated Class Action Complaint at ¶¶ 4-9.  The proposed Class Period is any time between

April 29, 2011 and the present.  *See id.* at ¶ 87.

## II.      STANDARD FOR DISMISSAL

Regarding the standard for determining whether to dismiss a claim pursuant to Federal Rule

of Civil Procedure 12(b)(6), the United States Supreme Court has held:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

> reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal quotations and citations omitted). A court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotations and citation omitted). Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

III.   DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

In conjunction with their motion to dismiss, defendants filed a Request for Judicial Notice and Consideration of Documents in Support of Defendants' Motion to Dismiss Consolidated Class Action Complaint [docket no. 80].[3] Specifically, defendants request that this Court consider various

---

[3]Plaintiffs filed no response to defendants' request.

documents Chesapeake filed with the Securities and Exchange Commission ("SEC") and five charts from various sources on the internet.

On a motion to dismiss pursuant to Rule 12(b)(6), "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated in the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may take judicial notice of documents that are referred to in the complaint, even if those documents were not attached to the complaint or explicitly incorporated by reference. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). Further, a court may take judicial notice of documents that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Numerous courts have taken judicial notice of the contents of SEC filings. *See, e.g., In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 838 F. Supp. 2d 1148, 1156 (D. Colo. 2012); *In re Thornburg Mortg., Inc. Sec. Litig.*, No. CIV 07-0815 JB/WDS, 2009 WL 5851089, at *3 (D.N.M. Dec. 21, 2009); *Thomas v. Metro. Life Ins. Co.*, No. CIV-07-0121-F, 2008 WL 4619822, at *10 (W.D. Okla. Oct. 16, 2008); *Sterlin v. Biomune Sys., Inc.*, 114 F. Supp. 2d 1163, 1172 (D. Utah 2000). Further, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007). Finally, a "district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000).

Having reviewed defendants' request and the documents at issue, and in light of the case law set forth above, the Court GRANTS defendants' request. For purposes of ruling on defendants' motion to dismiss, the Court will take judicial notice of and/or consider Exhibits 1 through 14 attached to defendants' Request for Judicial Notice and Consideration of Documents in Support of Defendants' Motion to Dismiss Consolidated Class Action Complaint.

IV.    DISCUSSION

    A.    Prudence Claim (Count I)

Defendants contend that plaintiffs fail to state a claim for breach of the duty of prudence. Specifically, defendants assert that a presumption of prudence attaches to the offering of employer stock where, as here, the plan is expressly designed to offer employer stock as an investment option. Defendants further assert that under this presumption, plan fiduciaries are only required to divest an ESOP of employer stock where the fiduciaries know or should know that the employer is in a "dire situation," such that the employer's viability as a going concern was threatened or its stock was in danger of becoming essentially worthless. Defendants contend that plaintiffs do not, and cannot, plead facts demonstrating that Chesapeake is, or ever was, in such a "dire situation" sufficient to overcome the presumption of prudence.

Plaintiffs, on the other hand, contend that Count I states a claim for breach of the duty to prudently manage the Plan's assets. Specifically, plaintiffs assert that the presumption of prudence has not been adopted by the Tenth Circuit and that defendants' actions, or lack thereof, during the Class Period must be reviewed *de novo* without the benefit of any presumption of prudence. Plaintiffs further assert that absent the benefit of the presumption of prudence, the conduct alleged in the Consolidated Class Action Complaint clearly shows a breach of fiduciary duty. Additionally,

plaintiffs assert that even if the Tenth Circuit did adopt the presumption, because the Plan documents do not require or encourage the offering of Chesapeake stock, the presumption does not apply to defendants' decision to maintain company stock.  Plaintiffs further assert that the presumption of prudence does not apply at the pleading stage.  Finally, plaintiffs assert that even if the presumption of prudence does apply, plaintiffs need not plead impending collapse to overcome the presumption, and they have pled sufficient facts to overcome the presumption.

      1.     "Presumption of prudence"

Recognizing the competing goals of ERISA and ESOPs[4], and attempting to balance these goals in relation to claims that an ESOP fiduciary violated its ERISA duties by continuing to invest in employer securities, the Third Circuit, in *Moench v. Robertson*, 62 F.3d 553 (3rd Cir. 1995), developed the "presumption of prudence."  Specifically, the Third Circuit found:

> In a case such as this, in which the fiduciary is not absolutely required to invest in employer securities but is more than simply permitted to make such investments, while the fiduciary presumptively is required to invest in employer securities, there may come a time when such investments no longer serve the purpose of the trust, or the settlor's intent.  Therefore, fiduciaries should not be immune from judicial inquiry, as a directed trustee essentially is, but also should not be subject to the strict scrutiny that would be exercised over a trustee only authorized to make a particular investment.  Thus, a court should not undertake a de novo review of the fiduciary's actions . . . .  Rather, the most logical result is that the fiduciary's decision to continue investing in employer securities should be reviewed for an abuse of discretion.

---

[4]"ESOPs, unlike pension plans, are not intended to guarantee retirement benefits, and indeed, by its very nature an ESOP places employee retirement assets at much greater risk than does the typical diversified ERISA plan." *Moench*, 62 F.3d at 568 (internal quotations and citation omitted). "Under their original rationale, ESOPs were described as . . . device[s] for expanding the national capital base among employees – an effective merger of the roles of capitalist and worker." *Id.* (internal quotations and citation omitted).

> . . . we hold that in the first instance, an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.
>
> In attempting to rebut the presumption, the plaintiff may introduce evidence that "owing to circumstances not known to the settlor and not anticipated by him [the making of such investment] would defeat or substantially impair the accomplishment of the purposes of the trust." Restatement (Second) § 227 comment g. As in all trust cases, in reviewing the fiduciary's actions, the court must be governed by the intent behind the trust – in other words, the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate. In determining whether the plaintiff has overcome the presumption, the courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive.
>
> In considering whether the presumption that an ESOP fiduciary who has invested in employer securities has acted consistently with ERISA has been rebutted, courts should be cognizant that as the financial state of the company deteriorates, ESOP fiduciaries who double as directors of the corporation often begin to serve two masters. And the more uncertain the loyalties of the fiduciary, the less discretion it has to act.

*Moench*, 62 F.3d at 571-72 (internal citation omitted).

The Second, Fifth, Sixth, Seventh, Ninth and Eleventh Circuits have all expressly adopted the *Moench* "presumption of prudence," and no federal appellate court has rejected the presumption on its merits. *See White v. Marshall & Ilsley Corp.*, 714 F.3d 980 (7th Cir. 2013); *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267 (11th Cir. 2012); *In re Citigroup ERISA Litig.*, 662 F.3d 128 (2d Cir. 2011); *Quan v. Computer Sciences Corp.*, 623 F.3d 870 (9th Cir. 2010); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008); *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995).

However, while the circuit courts have adopted the "presumption of prudence," the framework of the presumption does vary to some extent among the circuits.

When adopting the *Moench* presumption, the Ninth Circuit agreed with the Third Circuit and added "that if there is room for reasonable fiduciaries to disagree as to whether they are bound to divest from company stock, the abuse of discretion standard protects a fiduciary's choice not to divest.  This will allow fiduciaries to fulfill their duties in the safe harbor that Congress seems to have intended to provide them for managing EIAPs and ESOPs."  *Quan*, 623 F.3d at 882 (internal quotations and citation omitted).  The Ninth Circuit further held:

> To overcome the presumption of prudent investment, plaintiffs must therefore make allegations that clearly implicate the company's viability as an ongoing concern or show a precipitous decline in the employer's stock . . . combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement.

*Id.* (internal quotations and citations omitted).

In *In re Citigroup*, the Second Circuit adopted the *Moench* "presumption of prudence" and endorsed the "guiding principle" recognized by the Ninth Circuit that "judicial scrutiny should increase with the degree of discretion a plan gives its fiduciaries to invest", finding that "a fiduciary's failure to divest from company stock is less likely to constitute an abuse of discretion if the plan's terms require – rather than merely permit – investment in company stock."  *In re Citigroup*, 662 F.3d at 138.  The Second Circuit then set forth its formulation of the presumption as follows:

> We agree with [the *Moench* court's] formulation and cannot imagine that an ESOP or EIAP settlor, mindful of the long-term horizon of retirement savings, would intend that fiduciaries divest from employer stock at the sign of any impending price decline.  Rather, we believe that only circumstances placing the employer in a "dire situation" that was objectively unforeseeable by the settlor could

require fiduciaries to override plan terms. The presumption is to serve as a "substantial shield," that should protect fiduciaries from liability where there is room for reasonable fiduciaries to disagree as to whether they are bound to divest from company stock. The test of prudence is . . . one of conduct rather than results, and the abuse of discretion standard ensures that a fiduciary's conduct cannot be second-guessed so long as it is reasonable.

Although proof of the employer's impending collapse may not be required to establish liability, [m]ere stock fluctuations, even those that trend downhill significantly, are insufficient to establish the requisite imprudence to rebut the *Moench* presumption. We judge a fiduciary's actions based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight. We cannot rely, after the fact, on the magnitude of the decrease in the employer's stock price; rather, we must consider the extent to which plan fiduciaries at a given point in time reasonably could have predicted the outcome that followed.

*Id.* at 140 (internal quotations and citations omitted).

On the other hand, in *Kirschbaum*, the Fifth Circuit did not hold that the "presumption of prudence" could be overcome only in the case of investments in stock of a company that is about to collapse. *See Kirschbaum*, 526 F.3d at 256. The Fifth Circuit held:

[t]he presumption, however, is a substantial shield. As *Moench* states, it may only be rebutted if unforeseen circumstances would defeat or substantially impair the accomplishment of the trust's purposes. One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions. Instead, there ought to be persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest. Less than rigorous application of the *Moench* presumption threatens its essential purpose. A fiduciary cannot be placed in the untenable position of having to predict the future of the company stock's performance. In such a case, he could be sued for not selling if he adhered to the plan, but also sued for deviating from the plan if the stock rebounded.

*Id.* (internal citation omitted).

Additionally, in *Lanfear*, the Eleventh Circuit rejects any interpretation of the presumption that provides that the only circumstance in which a fiduciary could abuse its discretion by following an ESOP plan's directions about company stock was when the fiduciary knew that the company was peering over the precipice into a financial abyss. *See Lanfear*, 679 F.3d at 1280. Instead, the Eleventh Circuit sets forth the test as follows:

> Although a fiduciary is generally required to invest according to the terms of the plan, when circumstances arise such that continuing to do so would defeat or substantially impair the purpose of the plan, a prudent fiduciary should deviate from those terms to the extent necessary. Because the purpose of a plan is set by its settlors (those who created it), that is the same thing as saying that a fiduciary abuses his discretion by acting in compliance with the directions of the plan only when the fiduciary could not have reasonably believed that the settlors would have intended for him to do so under the circumstances. That is the test.

*Id.* at 1281.

The Tenth Circuit has not addressed whether it would adopt the *Moench* "presumption of prudence." However, the Tenth Circuit has held:

> While an ESOP fiduciary may be released from certain Per se violations on investments in employer securities under the provisions of ss 406 and 407 of ERISA, the structure of the Act itself requires that in making an investment decision of whether or not a plan's assets should be invested in employers securities, an ESOP fiduciary, just as fiduciaries of other plans, is governed by the "solely in the interest" and "prudence" tests of ss 404(a)(1)(A) and (B).

*Eaves v. Penn*, 587 F.2d 453, 459 (10th Cir. 1978). Further, the Tenth Circuit has found that "[j]udicial review of fiduciary actions is highly deferential." *Ershick v. United Mo. Bank of Kan. City*, 948 F.2d 660, 666 (10th Cir. 1991).

Based upon the Tenth Circuit's prior decisions and the sound reasoning behind the *Moench* "presumption of prudence," the Court finds that the Tenth Circuit would adopt the *Moench*

14

"presumption of prudence" in cases in which, under the terms of an ERISA plan, the fiduciary is not absolutely required to invest in employer securities but is more than simply permitted to make such investments and would apply an abuse of discretion standard of review to the fiduciary's decision to continue investing in employer securities.  Further, the Court finds that the Tenth Circuit would require the plaintiff to show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate in order to demonstrate an abuse of discretion.  The Tenth Circuit would also require the plaintiff to present persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest.  However, the Court finds that the Tenth Circuit would not require the plaintiff to show that the company was facing impending collapse.

<b>2.</b>     <u>Applicability of presumption at motion to dismiss stage</u>

Plaintiffs assert that the "presumption of prudence" is not applicable at the pleading stage of an action.  The Second, Third, Fifth, Seventh, and Eleventh Circuits have applied the presumption when considering motions to dismiss; the Sixth Circuit has not.

> The "presumption" is not an evidentiary presumption; it is a standard of review applied to a decision made by an ERISA fiduciary.  Where plaintiffs do not allege facts sufficient to establish that a plan fiduciary has abused his discretion, there is no reason not to grant a motion to dismiss.

*In re Citigroup*, 662 F.3d at 139.  *See also Lanfear*, 679 F.3d at 1281 ("The *Moench* standard of review of fiduciary action is just that, a standard of review; it is not an evidentiary presumption.  It applies at the motion to dismiss stage as well as thereafter."); *White*, 714 F.3d at 990-91 ("As to its application at the pleading stage, the presumption of prudence is not an evidentiary standard but a

substantive legal standard of liability and conduct.  Thus, we agree with the Second, Third, and Eleventh Circuits that a claim against ESOP fiduciaries alleging a violation of the duty of prudence may be dismissed at the pleading stage if the plaintiffs do not make allegations sufficient to overcome the presumption of prudence.")

Having reviewed the decisions by the circuit courts that have addressed this issue, the Court finds the reasoning of the Second, Third, Fifth, Seventh, and Eleventh Circuits more persuasive, particularly in light of the requirement that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.  The Court, therefore, finds that the "presumption of prudence" is appropriately applied at the motion to dismiss stage.

<u>3.</u>      <u>Applicability of presumption to Plan</u>

As set forth in *Moench*, the "presumption of prudence" applies when "the fiduciary is not absolutely required to invest in employer securities but is more than simply permitted to make such investments".  *Moench*, 62 F.3d at 571.  Therefore, the Court must determine if under the Plan, the fiduciaries are not absolutely required to invest in employer securities but is more than simply permitted to make such investments.

Having reviewed the Plan as a whole, the Court finds that it does more than simply permit the fiduciaries to make investments in Chesapeake stock, and, in fact, encourages such investment. For example, the Plan requires the employer discretionary contributions to be "in the form of Qualifying Employer Securities or in cash designated by the Employer to be invested in Qualifying Employer Securities" and requires the employer matching contributions "to be invested in Qualifying Employer Securities".  *See* Plan at CHK_WC000171 and CHK_WC 000187. Additionally, the Plan requires that dividends be automatically reinvested in Chesapeake stock if no

16

other election is made.  *See* Plan at CHK_WC000215.  Finally, the Investment Policy Statement provides that the Plan will include Chesapeake common stock.  *See* Investment Policy Statement, attached as Exhibit 1 to the Consolidated Class Action Complaint, at CHK-WC000001. Accordingly, the Court finds that the "presumption of prudence" is applicable to the Plan.

<u>4.     Sufficiency of complaint</u>[5]

In order for plaintiffs to sufficiently allege their prudence claim, they must set forth sufficient facts, presumed to be true and construed in the light most favorable to plaintiffs, showing that they plausibly can overcome the "presumption of prudence."  As set forth above, plaintiffs must plead persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest and that the defendant fiduciaries could not have believed reasonably that continued adherence to the Plan's direction was in keeping with the settlor's expectations of how a prudent trustee would operate in these circumstances.

Having carefully reviewed the Consolidated Class Action Complaint, the Court finds that although plaintiffs have set forth numerous specific and detailed facts regarding certain aspects of Chesapeake's financial well-being, and even presuming these facts to be true and construing them in the light most favorable to plaintiffs, plaintiffs have not shown that they plausibly can overcome the "presumption of prudence."  Most damaging to plaintiffs' prudence claim is the fact that the price of Chesapeake stock during the Class Period always retained significant value.  The lowest price pled in the complaint is $19.60 on May 1, 2012, and on the date the complaint was filed, the price was $20.19.  The Court finds that it is implausible that a reasonable fiduciary would have

---

[5]In their motion to dismiss, defendants only dispute whether plaintiffs have rebutted the "presumption of prudence."  Defendants do not dispute that they are fiduciaries of the Plan.

considered himself bound to divest when the price of the stock was only slightly less than twenty dollars. In fact, had the defendant fiduciaries stopped purchasing Chesapeake stock and divested the Plan of Chesapeake stock, they would have risked liability for having failed to follow the terms of the Plan, particularly if the price of Chesapeake stock increased, as it has, in fact, done.

Additionally, the Court finds that all of the facts plaintiffs set forth in the complaint regarding the financial state of Chesapeake does not alter the plausibility of plaintiffs' prudence claim. While Chesapeake had significant working capital deficits, had significant long term debt, and had operating losses during the Class Period, Chesapeake also, throughout 2011-2012, had annual revenues in excess of $11.5 billion, combined net income of nearly $1 billion, and increased its total assets from over $34 billion to over $41 billion. Further, Chesapeake's cash deficits in 2010 of more than $6 billion were similar to the cash deficits Chesapeake had had since 2007.[6] Chesapeake's Altman Z-score similarly has been in the distress zone since 2003. Based upon the above, the Court finds plaintiffs have not plausibly shown that the defendant fiduciaries could not have believed reasonably that continued adherence to the Plan's direction was in keeping with the settlor's expectations of how a prudent trustee would operate in these circumstances. Based upon Chesapeake's history, the Court finds it implausible that divesting the Plan of Chesapeake stock would have been in keeping with the settlor's expectations.

Accordingly, the Court finds that plaintiffs' prudence claim should be dismissed.

B.    Loyalty Claim

Defendants contend that plaintiffs fail to state a claim for breach of the duty of loyalty. Specifically, defendants assert that the loyalty claim is derivative of plaintiffs' duty of prudence

---

[6]In fact, in 2008, Chesapeake had cash deficits of $12 billion.

claim and, therefore, fails because plaintiffs failed to state a prudence claim.  Defendants further assert that a conflict-of-interest claim cannot be based solely on the link between an ERISA fiduciary's compensation and company stock.  Additionally, defendants assert that the receipt of company stock does not create a conflict but aligns the interests of plan fiduciaries with those of plan participants.  Finally, defendants assert that plaintiffs have alleged no facts suggesting that any defendant's ownership of Chesapeake stock prompted him or her to act against the interests of plan participants.

Plaintiffs contend that they sufficiently allege a claim for breach of the duty of loyalty.  Specifically, plaintiffs assert that their "conflicts" claim is not simply based on defendants' compensation in Chesapeake stock, but, rather, the core allegation is that the defendants engaged in their own self-interest without regard to safe-guarding the interests of the Plan and its participants.

To the extent that plaintiffs' loyalty claim is derivative of their prudence claim, the Court finds that the loyalty claim should be dismissed based upon the dismissal of the prudence claim.  To the extent that plaintiffs' loyalty claim is based upon the fiduciary's compensation being significantly tied to the price of Chesapeake stock and the fiduciary's incentive to keep Chesapeake stock's price inflated, the Court finds that plaintiffs have not set forth sufficient factual allegations to state a claim for breach of the duty of loyalty.  In their Consolidated Class Action Complaint, plaintiffs simply make the following conclusory statement with no factual allegations to support the statement: "Because the compensation of at least some of the Defendants was significantly tied to the price of Chesapeake Stock, they had an incentive to keep its price artificially inflated." Consolidated Class Action Complaint at ¶ 208.  Additionally, a conflict of interest claim can not be based solely on the fact that an ERISA fiduciary's compensation was linked to the company's stock.

*See In re Citigroup*, 662 F.3d at 146 ("We agree with the many courts that have refused to hold that a conflict of interest claim can be based solely on the fact that an ERISA fiduciary's compensation was linked to the company's stock.").

Accordingly, the Court finds that plaintiffs' loyalty claim should be dismissed.

C.      Failure to Adequately Monitor Other Fiduciaries Claim

Because plaintiffs' failure to adequately monitor other fiduciaries claim is derivative of their prudence and loyalty claims, and because the prudence and loyalty claims have been dismissed, the Court finds that plaintiffs' failure to adequately monitor other fiduciaries claim should be dismissed.

V.      CONCLUSION

For the reasons set forth above, the Court GRANTS defendants' Motion to Dismiss [docket no. 79] and defendants' Request for Judicial Notice and Consideration of Documents in Support of Defendants' Motion to Dismiss Consolidated Class Action Complaint [docket no. 80] and DISMISSES the Consolidate Class Action Complaint.

**IT IS SO ORDERED this 11th day of October, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE